UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JORDAN M.
o/b/o  MICHAEL M.
                Plaintiff,

v.                                                              1:20-CV-1543
                                                                (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
| --- | --- |
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>6000 North Bailey Ave, Ste. 1A<br>Amherst, NY 14226 | KENNETH HILLER, ESQ.<br>JEANNE MURRAY, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | DANIELLA CALENZO, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented, in accordance with a Standing Order, to proceed before the undersigned.  (Dkt. No. 13.)  The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).  The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

## I.      RELEVANT BACKGROUND

### A.    Factual Background

Claimant was born in 1961.  (T. 205.)  He completed two years of college.  (T. 209.)  Generally, Plaintiff's alleged disability consists of type 2 diabetes, congestive heart failure, cardiomyopathy, ulcers, and depression.  (T. 208.)  His alleged disability onset date is November 30, 2016.  (T. 205.)  His date last insured is December 31, 2021.  (*Id*.)  His past relevant work consists of plant manager.  (T. 25, 209.)  Claimant died on August 9, 2019, and Plaintiff was substituted as the party on his behalf.  (T. 43-44, 891.)

### B.    Procedural History

On August 14, 2017, Claimant applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act.  (T. 81.)  Claimant's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ").  On November 6, 2019, Plaintiff appeared before the ALJ, David J. Begley.  (T. 55-80.)  On January 8, 2020, ALJ Begley issued a written decision finding Claimant not disabled under the Social Security Act.  (T. 7-42.)  On September 18, 2020, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law.  (T. 12-37.)  First, the ALJ found Claimant had not engaged in substantial gainful activity since November 30, 2016.  (T. 12.)  Second, the ALJ found Claimant had the severe impairments of diabetes mellitus, coronary artery disease,

alcohol induced cardiomyopathy, depression, and anxiety.  (*Id*.)  Third, the ALJ found

even with Claimant's substance abuse, he did not have an impairment that meets or

medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P,

Appendix. 1.  (T. 13.)  Fourth, the ALJ found that based on all of the impairments,

including substance use, Claimant had the residual functional capacity ("RFC") to

perform medium work as defined in 20 C.F.R. § 404.1567(c), except he could not climb

ladders, ropes, or scaffolds; could only occasionally climb ramps or stairs, balance,

stoop, kneel, crouch, or crawl; and had to avoid concentrated exposure to hazardous

machinery, unprotected heights, and open flames.  (T. 16.)[1]  The ALJ further concluded

Claimant was limited to performing simple, routine, repetitive tasks in a work

environment free of fast paced production requirements, involving only simple work-

related decisions and few, if any, workplace changes; and he would be absent form

work at least two days a month on a regular and consistent basis.  (*Id*.)  Fifth, the ALJ

determined Claimant unable to perform past relevant work and considering Claimant's

vocational factors, there were no jobs that existed in significant numbers in the national

economy Plaintiff could perform.  (T. 25-26.)

Sixth, the ALJ determined if Claimant stopped the substance abuse, the

"remaining limitations" would cause more than a minimal impact on his ability to perform

basic activities; and therefore, Claimant would have a severe impairment or combination

of impairments.  (T. 27.)  Seventh, the ALJ determined if Claimant stopped the

substance abuse, he would not have an impairment that meets or medically equals one

---

[1]       Medium work involves lifting no more than 50 pounds at a time with frequent lifting or
carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or
she can also do sedentary and light work.  20 C.F.R. § 404.1567(c).

of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 28.)

Eighth, the ALJ determined, if Claimant stopped substance use, he had the RFC to

perform medium work as defined in 20 C.F.R. § 404.1567(c), except he could not climb

ladders, ropes, or scaffolds; could only occasionally climb ramps or stairs, balance,

stoop, kneel, crouch, or crawl; and had to avoid concentrated exposure to hazardous

machinery, unprotected heights, and open flames.  (T. 29.)  Ninth, the ALJ determined if

Claimant stopped substance use, he would have been able to perform his past relevant

work as a plant manager.  (T. 35.)  Tenth, the ALJ determined the substance use

disorder was a contributing factor material to the determination of disability because

Claimant would not be disabled if he stopped the substance use and therefore, because

the substance use disorder was a contributing factor material to the determination of

disability, Claimant had not been disabled within the meaning of the Social Security Act.

(T. 36.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes two separate arguments in support of his motion for judgment on

the pleadings.  First, Plaintiff argues the ALJ's drug addiction and alcoholism ("DAA")

materiality finding was not based on substantial evidence.  (Dkt. No. 8 at 16-19.)

Second, and lastly, Plaintiff argues the RFC finding that Claimant would have been able

to work in the national economy without substance abuse was not based on substantial

evidence.  (*Id*. at 19-26.)  Plaintiff also filed a reply in which he deemed no reply

necessary.  (Dkt. No. 11.)

### B.     Defendant's Arguments

In response, Defendant makes two arguments.  First, Defendant argues the ALJ properly considered Claimant's mental impairments and substantial evidence supports his finding that substance abuse was a material factor contributing to the determination of disability.  (Dkt. No. 10 at 8-20.)  Second, Defendant argues the ALJ properly considered Claimant's physical impairments in finding he was capable of a range of medium work.  (*Id*. at 20-29.)

## III.     RELEVANT LEGAL STANDARD

### B.     Standard of Review

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The "substantial evidence" standard "means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "[I]t is . . . a very deferential standard of review - even more so than the 'clearly erroneous' standard."  *Brault v. Soc. Sec. Admin*., 683 F.3d 443, 448 (2d Cir. 2012).  In particular, it requires deference "to the Commissioner's resolution of conflicting evidence."  *Cage v. Comm'r of Soc. Sec*., 692 F.3d 118, 122 (2d Cir. 2012). It is not the Court's "function to determine *de novo* whether a plaintiff is disabled." *Brault,* 683 F.3d. at 447.  "In determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks omitted).  "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."  *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d

Cir. 2014). "The substantial evidence standard means once an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.' " *Brault,* 683 F.3d at 448. The Court "require[s] that the crucial factors in any determination be set forth with sufficient specificity to enable [the reviewing Court] to decide whether the determination is supported by substantial evidence." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (alterations and internal quotation marks omitted).

### C.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Schillo v. Kijakazi*, 31 F.4th 64, 70 (2d Cir. 2022).

When there is medical evidence of an applicant's drug or alcohol abuse, the disability inquiry does not end with the five-step analysis. *See* 20 C.F.R. § 404.1535(a). In such cases, even though a claimant initially meets the traditional definition of disabled under the Social Security Act ("the Act"), the ALJ must conduct a secondary analysis to

determine whether claimant's DAA is material to an initial finding of disability.  20 C.F.R. § 404.1535(a)-(b); *see also* SSR 13-2p, 2013 WL 621536, at *4 (S.S.A. Feb. 20, 2013)[2].

A "key factor" in such secondary analysis is whether the claimant would still be found disabled if he stopped using drugs or alcohol.  *See* 20 C.F.R. § 404.1535(b)(2). The ALJ first determines whether physical and mental limitations would remain in the absence of substance abuse.  *Id*.  If so, the ALJ then decides whether those remaining limitations are disabling on their own.  *Id*.  If so, the claimant is considered disabled within the meaning of the Act notwithstanding his drug addiction or alcoholism.  *Id*. § 404.1535(b)(2)(ii).  If not, alcohol or substance abuse is considered material, and the claimant is not eligible for benefits.  *Id*. § 404.1535(b)(2)(i).

## IV.   ANALYSIS

### A.  Materiality Determination Absent a Medical Opinion

Plaintiff argues the ALJ erred in determining Claimant would no longer be disabled absent substance abuse because "it is unclear how the ALJ was able to parse out [Claimant's] substance abuse issues from his mental health limitations, as the record demonstrates them as being inextricably linked."  (Dkt. No. 8 at 17.)  Plaintiff asserts, the consultative examiner indicated his opined limitations were based on Claimant's mental health impairments and substance abuse and therefore "it is unclear how the ALJ, who is not a medical professional, was able to parse out [Claimant's]

---

[2]     In 1996, Congress enacted the Contract with America Advancement Act ("CAAA"), to provide that *"[a]n individual shall not be considered ... disabled ... if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled."* Pub.L. No. 104-121 § 105(a)(1), 110 Stat. 847 (codified at 42 U.S.C. § 423(d)(2)(C)). This amendment, sometimes referred to in interpretive jurisprudence as the "DAA (drug addiction or alcoholism) Amendment" *alters* the traditional definition of disability. *Cage v. Commissioner of Soc. Sec.,* 692 F.3d 118, 123-124 (2d Cir. 2012), *cert. denied, -* U.S. –, 133 S.Ct. 2881 (2013).

mental health and substance abuse issued, when [the consultative examiner] did not."
(*Id*. at 18.)  Plaintiff argues the ALJ's "interpretation" of the opinion, "attributing
[Claimant's] limitations to substance abuse rather than to both his substance abuse and
mental health impairments, was a mischaracterization of the record, which cannot form
the basis for the ALJ's decision."  (*Id*.)

Essentially, Plaintiff argues Claimant's mental health impairment cannot be
untangled from his substance abuse because no medical source provided limitations
based on mental impairments alone; and therefore, the ALJ relied on his own lay
interpretation of the opinion in concluding Claimant's limitations due to mental health
impairments would be non-disabling absent substance abuse.

Defendant argues, and this Court agrees, the ALJ properly considered the
evidence of record, including periods of abstinence, and properly concluded that, when
not abusing alcohol, Plaintiff's mental impairments did not significantly limit his ability to
perform the mental capacities required of basic work activities.  (Dkt. No. 10 at 8.)

As an initial matter, an ALJ's RFC determination is not fatally flawed merely
because it was formulated absent a medical opinion.  The Second Circuit has held that
where, "the record contains sufficient evidence from which an ALJ can assess the
[plaintiff's] residual functional capacity, a medical source statement or formal medical
opinion is not necessarily required."  *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 8
(2d Cir. 2017) (internal quotations and citation omitted).  The ALJ is obligated to
formulate a claimant's RFC based on the record as a whole, not just upon the medical
opinions alone.  *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 79 (2d Cir.
2018).  As with an RFC determination, it is the duty of the ALJ to determine whether

DAA is material to the determination of disability.  SSR 13-2p (S.S.A. Feb. 20, 2013)

("At the ALJ and Appeals Council levels (when the Appeals Council makes a decision),

the ALJ or Appeals Council determines whether *DAA* is material to the determination of

disability.")

 Here Plaintiff argues, "Dr. Fabiano did not make the distinction that [his opinion of

moderate limitations in Claimant's ability to regulate his emotions, control his behavior,

and maintain well-being] applied only to Plaintiff's substance abuse issues, rather it was

due to his mental health impairments *and* his substance abuse. It is unclear how the

ALJ, who is not a medical professional, was able to parse out Plaintiff's mental health

and substance abuse issues, when Dr. Fabiano, a psychologist, did not.*"* (Dkt. No. 8 at

17-18 internal citations omitted.)  In *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 126

(2d Cir. 2012) the Court was faced with a similar argument and rejected it.

 The claimant in *Cage* argued "an ALJ cannot find that drug or alcohol use is a

contributing factor where there is no medical opinion addressing the issue."  *Cage*, 692

F.3d at 126 (internal quotation omitted).  The Court concluded, "such a rule, found

nowhere in the U.S.Code or C.F.R., is unsound.  It would unnecessarily hamper ALJs

and impede the efficient disposition of applications in circumstances that demonstrate

DAA materiality in the absence of predictive opinions."  *Id.*, at 126 (internal citations and

quotations omitted).

 The claimant in *Cage* then argued, similar again to Plaintiff's argument here, it

was not possible for the ALJ to find DAA materiality in her case because it was not

possible for an ALJ to separate the limitations imposed by substance abuse and by

other impairments.  *Cage,*  692 F.3d at 126.  The Second Circuit concluded,

notwithstanding the lack of a consultative opinion predicting her impairments in the absence of drug or alcohol abuse, substantial evidence supported the ALJ's determination. *Id*.; *see Wettlaufer v. Colvin*, 203 F. Supp. 3d 266, 277 (W.D.N.Y. 2016) (same). Here, as in *Cage*, substantial evidence supported the ALJ's determination.

The ALJ's finding of DDA materiality was supported by substantial evidence, notwithstanding the lack of a medical opinion's prediction of Claimant's impairments in the absence of DAA. *See Cage*, 692 F.3d at 126 (2d Cir. 2012) ("By arguing that it was "not possible" for the ALJ to find DAA materiality in her case, Cage in substance is advancing a sufficiency-of-the-evidence challenge: Was the ALJ's finding of DAA materiality supported by substantial evidence, notwithstanding the lack of a consultive opinion predicting her impairments in the absence of drug or alcohol abuse?"). Substantial evidence "means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin*, 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position).

Here, the ALJ's determination, that DAA was material to the determination of disability, was proper and supported by substantial evidence. The ALJ relied on periods of abstinence in supporting his materiality finding. A "period of abstinence" is a period

of time in which "a claimant who has, or had, been dependent upon or abusing drugs or alcohol and stopped their use."  SSR 13-2p, fn. 17.  Periods of abstinence can be evidence used to determine if an impairment would improve to the point of nondisability. *Sherry L. v. Comm'r of Soc. Sec.*, No. 20-CV-01432, 2022 WL 2180159, at *7 (W.D.N.Y. June 16, 2022); s*ee Mullen v. Berryhill*, No. 16-CV-476, 2017 WL 2728583, at *4 (W.D.N.Y. June 26, 2017) (same).

When considering periods of abstinence, "in cases involving co-occurring mental disorders, the documentation of a period of abstinence should provide information about what, if any, medical findings and impairment-related limitations remained after the acute effects of drug and alcohol use abated.  Adjudicators may draw inferences from such information based on the length of the period(s), how recently the period(s) occurred, and whether the severity of the co-occurring impairment(s) increased after the period(s) of abstinence ended."  SSR 13-2P (S.S.A. Feb. 20, 2013).

In making his DAA determination, the ALJ concluded that if Claimant ceased substance use "the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would have a severe impairment or combination of impairments."  (T. 27.)  The ALJ did not specifically list Claimant's "remaining limitations" at this step; however, the ALJ stated elsewhere in his decision that evidence in the record supported a finding of non-severe mental impairments. (T. 33.)  Despite finding Claimant's mental impairments non-severe in the absence of DAA, the ALJ proceeded through the sequential process and considers Claimant's mental impairments at each step.  Therefore, insofar as Plaintiff argues the ALJ failed to find Claimant's mental impairments severe absent substance

abuse (Dkt. No. 8 at 21-22), Plaintiff's argument fails.  Here, any error in finding mental impairments non-severe absent substance abuse would be harmless.  *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps).

The ALJ concluded the severity of Claimant's mental impairments, absent substance abuse, would not meet or equal a listing.  (T. 27.)  In making his finding, the ALJ properly evaluated the evidence under the "special technique."  (*Id*.)  In addition to the typical five-step analysis outlined in 20 C.F.R. § 404.1520, the ALJ must apply a "special technique" at the second and third steps to evaluate alleged mental impairments.  *See Kohler v. Astrue,* 546 F.3d 260, 265 (2d Cir.2008).

Consistent with the special technique, the ALJ considered whether the "paragraph B" criteria were satisfied.  (T. 27.)[3]  The ALJ concluded, absent substance abuse, Claimant had mild limitations in his ability to understand, remember or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage himself.  (T. 27-28.)  A mental impairment rated as "none" or "mild" generally will not qualify as "severe," whereas those rated as "moderate," "marked," or "extreme" will qualify as "severe" under step two.  *Schafenberg v. Saul*, 858 F. App'x 455, 456 (2d Cir. 2021); *see* 20 C.F.R. § 404.1520a(d)(1).

The ALJ then discussed opinion and objective evidence in the record regarding Claimant's mental health impairments during periods of sobriety.  The ALJ's reliance on evidence that Claimant experienced exacerbated psychiatric symptoms during times he

---

[3]       The four functional areas, or "paragraph B criteria," represent the areas of mental functioning a person uses in a work setting.  20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(A)(2)(b).

was abusing alcohol, but that he improved with treatment and sobriety, was a proper basis for determining the materiality of drug and alcohol abuse. *Cage,* 692 F.3d 118 at 123; *see Guilbe v. Colvin*, 2015 WL 1499473, at *11 (same). Courts have ruled that improvement with treatment and sobriety is evidence that supports a finding of materiality. *Smith v. Comm'r of Soc. Sec.* 731 Fed. Appx. 28, 30 (2d. Cir. 2018) (materiality finding proper where the claimant's medical records reflected that her depression, anxiety and bipolar disorder symptoms were well-managed through medications and that her functioning improved when she underwent substance abuse treatment).

The ALJ concluded objective medical evidence supported a finding that during periods of sobriety Claimant's mental health improved. (T. 30.) The ALJ outlined treatment received in August 2017, during which time Claimant reported to a provider he had abstained from alcohol for nearly one month and the provider noted his mental status examination was normal. (T. 31.) Claimant's depression and anxiety were described as stable. (*Id*.) Indeed, Claimant presented for chronic medical problems complaining of swelling and tingling in his feet, shortness of breath on exertion, slow urine stream, and dizziness and forgetfulness. (T. 430.) On examination Claimant was cooperative, with a normal mood, and appropriate affect. (T. 432.) Claimant reported his depression and anxiety symptoms were stable on current medication. (T. 432-433.)

The ALJ also considered periods of sobriety in 2018. In April 2018, Claimant reported to his primary care provider that he was not taking medications consistently and his depression had worsened over the past month. (T. 32.) The ALJ noted the provider's observation that Claimant's attention span and concentration were normal,

his judgment was adequate and realistic, and his insight was fair.  (*Id.*)  In May 2018, following a hospital detox program, Claimant was observed to appear healthy and well-developed.  (*Id.*)  In November 2018, Claimant reported his last drink was nine days prior.  (T. 571.)  He reported that he was non-complaint with his anxiety medication, but when he does take his medication, he "feels like his anxiety is better."  (*Id.*)  On examination Claimant was cooperative, his mood was normal, his language processing was intact, and he was alert and oriented.  (T. 572.)  The ALJ considered 2019 reports during periods of sobriety.  (T. 32-33.)  On January 22, 2019, Claimant reported no alcohol use since January 19, 2019.  (T. 578.)  He was cooperative and pleasant, depressed at times, alert and oriented, had a normal attention span and concentration, had fair and realistic judgment, and had fair insight.  (T. 579-580.)

The ALJ considered the examination and opinion provided by consultative examiner Gregory Fabiano, Ph.D. in October 2017.  (T. 31.)  Claimant reported he ceased alcohol "two weeks ago."  (T. 438.)  On a mental status exam, Claimant's recent and remote memory were mildly impaired due to distractibility, and his judgment was fair.  (T. 438-439.)  Dr. Fabiano opined Plaintiff had mild limitations in his ability to understand, remember, or apply simple directions and instructions and understand, remember, or apply complex directions and instructions; he appeared to have moderate limitations in the ability to interact adequately with supervisors, coworkers, and the public, regulate emotions, control behavior, and maintain well-being.  (T. 440.)  The doctor indicated that the results of the examination appeared to be consistent with psychiatric and substance abuse problems, and these problems did not appear to be significant enough to interfere with Plaintiff's ability to function on a daily basis; Plaintiff

should persist with his plan to initiate mental health treatment, maintain his sobriety, and alcohol treatment appeared warranted; and prognosis was fair, given the maintenance of sobriety and the initiation of appropriate mental health interventions.  (T. 440-441.) Dr. Fabiano diagnosed Plaintiff with alcohol substance use disorder, major depressive disorder, recurrent episodes, mild, and unspecified anxiety disorder.  (T. 440.)

The ALJ assessed Dr. Fabiano's administrative finding "generally persuasive." (T. 34); *see* 20 C.F.R. § 404.1520c (the ALJ must articulate how he or she considered certain factors in assessing medical opinions and prior administrative findings).  The ALJ concluded the mild and moderate limitations were supported by his exam findings, but not entirely consistent with the overall evidence.  (*Id*.)  The ALJ concluded the doctor's mild limitation findings were consistent with Claimant's level of functioning when sober; however, the doctor's moderate limitations were consistent with evidence as to Claimant's abilities while drinking.  (*Id*.)  Based on the overall evidence, the ALJ concluded, "[w]hen sober and complaint with prescribed medication, the claimant's mental status was typically normal, including his attention and memory, supporting a finding of non-severe impairments."  (T. 33.)

Overall, substantial evidence in the record supported the ALJ's conclusion that absent DAA, Claimant's mental health impairments would be non-severe.  The ALJ relied on objective medical observations performed during periods of sobriety and to a lesser degree Dr. Fabiano's examination and findings.  The ALJ provided a thorough written analysis to support his determination.  Therefore, remand is not required and the ALJ's determination is upheld.

**B.  RFC Determination and Prior Administrative Findings**

Plaintiff argues, "in assessing [Claimant's] RFC and finding that he would have been able to work in the national economy without substance use, the ALJ failed to reconcile said RFC with Dr. Fabiano's more limiting opinion, despite finding it generally persuasive, and he improperly cherry-picked Dr. Dave's more limiting opinion.  Because the resulting RFC was not based on substantial evidence, remand is required."  (Dkt. No. 8 at 19.)  For the reasons outlined below, the ALJ did not improperly cherry-pick opinion evidence and the RFC was supported by substantial evidence.

First, as outlined already herein, the ALJ properly evaluated Dr. Fabiano's opinion and substantial evidence in the record supported the ALJ's determination.  Therefore, remand is not required.

Second, Plaintiff argues the ALJ "cherry-picked" the administrative finding provided by consultative examiner, Nikita Dave, M.D.  (Dkt. No. 8 at 23.)  Plaintiff asserts, "the ALJ rejected the more limiting portions of [Dr. Dave's] opinion based on his own lay opinion as to Plaintiff's limitations and the non-examining opinions, which were not entitled to a finding that they were more persuasive than the opinion of a physician who actually examined [Claimant.]"  (*Id*. at 25.)

To be sure, the ALJ is "not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion."  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).  However, it is well settled that the ALJ is not required to formulate the RFC by adopting any one medical opinion in its entirety.  *My-Lein L. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d 100, 104 (W.D.N.Y. 2021) (collecting cases).  The ALJ has the duty to evaluate conflicts in the evidence.  *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) ("Genuine conflicts in

the medical evidence are for the Commissioner to resolve.") (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).  Plaintiff may disagree with the ALJ's conclusion; however, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 29 (2d Cir. 2018) (internal citations and quotations omitted).  Although Plaintiff asserts the ALJ impermissibly "cherry-picked" Dr. Dave's opinion, the ALJ was exercising his duty to formulate Claimant's RFC based on the record as a whole.

On October 12, 2017, Plaintiff underwent an internal medicine consultative examination with Dr. Dave.  (T. 442-447.)  On physical exam, Claimant's gait had slightly short steps, slightly wide based, squat 3/4 of full, his eyes had mild to moderate conjunctive pallor, diminished breath sounds at the lower quarter of the right lung at the base, sensation decreased significantly over the dorsal feet and toes, and slight tremor noted of the left fingers on and off with use.  (T. 444-446.)  Dr. Dave opined that "due to the heart, there may be moderate to marked limitations for activities requiring greater than sedentary exertion;" he would benefit from primarily seated activities, there "may be moderate to marked limitations for lifting, carrying, pushing, pulling, prolonged standing, and prolonged walking," this was also attributable to neuropathy in the feet, and he was to avoid ladders and heights, sharp equipment, and machinery.  (T. 446.)

The ALJ found Dr. Dave's opined limitations "somewhat persuasive as to the claimant's environmental limitations, but finds [claimant] was less restricted exertionally."  (T. 24.)  The ALJ concluded Dr. Dave's opinion was "somewhat supported" by her exam, but was "inconsistent with the overall evidence, which shows

the claimant had largely normal physical exams, particularly when sober." (*Id*.)  The ALJ concluded the environmental limitations were consistent with Claimant's "ongoing complaints of lightheadedness and dizziness." (*Id*.)

In finding Plaintiff capable of a range of medium work, the ALJ considered treatment notes pertaining to Claimant's diabetes.  (T. 17-18, 31-33.)  As noted by the ALJ, Claimant reported to providers he was not keeping track of his blood sugars.  (T. 571, 577, 899.)  Claimant reported some neuropathic pain especially when non-compliant with medications, which he acknowledged helped with his pain.  (T. 31-33, 571, 574, 577.)  Objective observations in the record described Claimant as generally was well-appearing and had normal gait, intact sensation and reflexes, no edema, full strength of the extremities, and full range of motion of the fingers.  (T. 309, 504, 538, 544, 567, 572, 575, 579, 620, 628, 643, 721, 877-878.)

The ALJ considered treatment notations provided by Claimant's cardiologist, Dr. Steven Horn, who treated Plaintiff for alcohol-induced cardiomyopathy and mild coronary artery disease.  (T. 31-32, 956.)  The ALJ noted Claimant denied exertional limitations, chest discomfort with exertion, palpitations, shortness of breath, or edema, and reported he was able to remain active without limitations, despite his cardiac impairments. (Tr. 31-35.)  Indeed, Claimant reported to Dr. Horn he was feeling quite well, had been sober for over 40 days, denied any type of chest discomfort or shortness of breath, and he remained active without any limitations.  (T. 532.)

The ALJ also considered Dr. Horn's observations that Claimant was compensated on examinations without signs or symptoms of heart failure. (T. 467-68, 532 (normal EKG); 958, 961.)  Further, Claimant's ejection fraction improved by April

2018.  (T. 32, 962, 1015.)  Significantly, Dr. Horn had attributed any potential worsening of Plaintiff's heart condition to his bingeing alcohol.  (T. 31, 468 ("He realizes that his alcohol abuse contributed to his heart muscle becoming weaker."); 467 ("recovery from nonischemic cardiomyopathy, likely secondary to alcohol abuse"); 962 ("I discussed the results with him and reiterated the importance of him avoiding any binge drinking.").)

In addition to Dr. Horn's treatment notations, the ALJ considered other objective evidence in the record such as emergency department visits.  On January 19, 2019, Claimant presented to the emergency department and reported being lightheaded, which he attributed to possible alcohol withdrawal or due to possibly taking too many of his blood pressure pills. (T. 32-33.)  His heart rhythm was in sinus tachycardia, though he did not have any chest pain and was discharged in stable condition.  (T. 33, 502-504.)  Thereafter, a visit with his primary care provider on January 22, Claimant had not taken his medications, felt lightheaded, and had a high blood pressure reading.  (T. 33, 577-578.)  He reported feeling that he was going to fall, though he did not have shortness of breath and chest pain.  (T. 577-578.)  On examination, Claimant was no in acute distress, had a normal examination of the neck and cardiovascular system, no edema of the extremities, and no pronator drift.  (T. 579.)  Claimant continued to report lightheadedness and dizziness in April 2019, though his condition improved with fluids. (T. 33.)  Claimant had a normal examination, including a normal gait.  (*Id*.)

The ALJ also considered Claimant's hospitalization from June 22 through July 30, 2019, during which Claimant was diagnosed with right facial fracture and was referred to alcohol rehabilitation.  (T. 22-23.)  At admission, Claimant was a poor historian, but reported two days of weakness and falls preceded by alcohol use, though

he denied shortness of breath and chest pain.  (T. 910 ("Endorses alcohol use prior [to falling]."), 917 ("Endorses alcohol use today."), 920 ("Patient notes he went to work today and, when he got home, he took 4 shots of vodka."), 932 ("The patient is inconsistent with the time of getting home from work").)  Cardiac examination was unremarkable and he exhibited full strength of the extremities.  (T. 933.)   CT and X-ray studies of the chest, including the heart, were unremarkable.  (T. 943-948.)  A head CT showed hemorrhage and contusions and was assessed with a closed head injury.  (T. 22, 910, 913-14, 937-938.)  On discharge, Plaintiff ambulated without assistance and could resume day-to-day activity and wear bear as tolerated.  (T. 910-911.)

Upon follow-up on July 31, 2019, Claimant reported he had not followed-up to address his head injuries after release from the hospital.  (T. 23.)  At the examination, Plaintiff appeared well-developed, was alert and oriented, had a normal cardiac examination, no neck limitation, and no evidence of edema.  (T. 904.)  Plaintiff was prescribed a rolling walker with a seat and was advised to follow-up with an ENT specialist for treatment of his skull fracture.  (T. 905.)

The ALJ also considered administrative findings in his formulation of the RFC. As outlined above, the ALJ considered Dr. Dave's examination and finding.  The ALJ also considered and found persuasive, the prior administrative findings from the State agency medical consultants.  (T. 35.)  Drs. D. Brauer and James Greco, reviewed the record on November 29, 2017, and July 28, 2018, respectively, and both found Claimant capable of medium work with postural and environmental limitations.  (T. 90-93, 459-460.)  The ALJ explained he found these findings persuasive because they were supported by the consultants' narratives explaining the bases of their opinions and

their references to the record.  *See* 20 C.F.R. § 404.1520c(c)(1) (explaining that in evaluating medical opinions, the more a medical source presents relevant objective evidence and supporting explanations to support his or her opinion, the more persuasive that opinion will be found).  The ALJ next explained he found the opinions consistent with the record, overall, including physical findings that did not show evidence of weakness or numbness, and normal physical examinations despite reported lightheadedness and falls, referenced above.  (T. 35); 20 C.F.R. § 404.1520c(c)(2) (explaining that the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinion will be found).

Plaintiff asserts findings of non-examining sources cannot constitute substantial evidence.  (Dkt. No. 8 at 25-26; citing 20 C.F.R. § 404.1527(c)(1).)  However, the new regulations eliminated the perceived hierarchy of medical sources.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01 (revision to regulations to "help eliminate confusion about a hierarchy of medical sources and instead focus adjudication more on the persuasiveness of the content of the evidence").  Here, the ALJ properly evaluated the findings of the non-examining sources and articulated his reasonings in finding the opinions persuasive under the new regulations found at 20 C.F.R. § 404.1520c.  Therefore, Plaintiff's argument, that as a matter of law the findings of a non-examining source cannot constitute substantial evidence, is without merit.

Lastly, Plaintiff argues Claimant passed away on August 9, 2019, due to cardiomyopathy as a consequence of alcohol abuse, and diabetes; therefore, his

impairments were more severe than the ALJ accounted for in the RFC.  (Dkt. No. 8 at 26.)  First, a subsequent finding of death, like a subsequent finding of disability, is not relevant to Claimant's condition during the time period.  *See Caron v. Colvin*, 600 F. App'x 43, 44 (2d Cir. 2015) (subsequent finding of disability not relevant to claimant's condition during the time period of prior application).  Further, Claimant's death was "a consequence of alcohol abuse."  (T. 891.)  DAA materiality forecloses an award of disability benefits.  *Cage*, 692 F.3d at 123 (an individual shall not be considered ... disabled ... if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled) (internal citation and quotation omitted).

The ALJ has the duty to evaluate conflicts in the evidence.  *Monroe,* 676 F. App'x at 7 ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).  Plaintiff may disagree with the ALJ's conclusion; however, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise."  *Morris v. Berryhill*, 721 F. App'x 29 (2d Cir. 2018) (internal citations and quotations omitted); *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence).  As long as substantial record evidence supports the ALJ's determination of the facts, the Court must defer to the ALJ's decision.  *See Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). As the Supreme Court stated, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."  *Biestek,* 139 S. Ct. at 1154.

Overall, the ALJ properly concluded Claimant retained the physical RFC to perform medium work with additional limitations.  The ALJ's determination was supported by substantial evidence in the record, namely objective medical observations and prior administrative findings.  Therefore, remand is not required and the ALJ's determination is upheld.

**ACCORDINGLY**, it is

      **ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is **DENIED**; and it is further

      **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED**; and it is further

      **ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

      **ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:      December 19, 2022

William B. Mitchell Carter
U.S. Magistrate Judge